In re Robert M. MICHAEL, Gwendolyn
K. Michael, Debtors.

No. 05–21968–TLM.

United States Bankruptcy Court,
D. Idaho.

Dec. 17, 2009.

Robert M. Michael, pro se.

Gwendolyn K. Michael, pro se.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Chief Judge.

Before the Court is a dispute over the effect of a bankruptcy sale of estate assets by a chapter 7 trustee. The matter was presented at an evidentiary hearing on October 6, 2009, argued on October 9, and taken under advisement.

The chapter 7 debtors, Robert and Gwendolyn Michael ("Debtors"), represent themselves. As a result, multiple extraneous issues and theories were argued. Further, the evidentiary record presented by Debtors at hearing made laborious the Court's evaluation of the material facts and issues in this matter.

The Court concludes that Debtors' motion to "reconsider" or set aside the sale should be denied. This Decision constitutes the Court's factual findings and legal conclusions. Fed. R. Bankr.P. 7052, 9014.

## BACKGROUND AND FACTS

### A. The bankruptcy

On October 13, 2005, Debtors filed a voluntary petition for chapter 7 relief, commencing this bankruptcy case.[1] They were at that time represented by counsel. Their discharge was granted on February 8, 2006.

The chapter 7 trustee, C. Barry Zimmerman ("Trustee") later issued, on November 13, 2006, a final report and accounting of his administration of the assets of the estate. It reflected that Trustee had gathered $2,255.54 worth of assets.[2] Distribution of that amount in the priorities demanded by the Bankruptcy Code would result in something less than a 2% dividend on creditors' claims. Following notice and lack of objection, the Court

---

1. The Court takes judicial notice of its own files and records under Fed.R.Evid. 201 in order to outline the course of events before it.

2. Other assets properly scheduled by Debtors were either exempt or, per Trustee, lacked appreciable equity and were abandoned.

issued, on January 12, 2007, an Order allowing Trustee's proposed final accounting and directing distribution. On June 13, 2007, following a supplemental report of Trustee, the Court discharged Trustee and closed the estate.

## B. The state court suits

Two lawsuits in the courts of Idaho are material to the present dispute. The Court outlines the same, as best it can from the record.[3]

### 1. *Leon's Mfg. Co., Inc. v. Robert Michael, et al.*

Stephen F. Smith, a Sandpoint, Idaho attorney ("Smith") represented Debtors in this First Judicial District, Boundary County, action, Case No. CV2003–432.[4] In this business dispute, Leon's Manufacturing Company ("Leon's") sued for breach of contract. Debtors counterclaimed for overcharges and offset.[5] The matter was

tried in late August, 2005, and a verdict was rendered in early September, 2005. Leon's recovered a judgment and was awarded costs and fees. A directed verdict was also rendered against Debtors on their counterclaim. The outcome in this case was, Debtors contend, based on Smith's failures in his legal representation in this action, including pleading errors.

As noted, Debtors filed bankruptcy in October, 2005, a little more than a month after the adverse verdict in *Leon's Mfg. Co. v. Michael*. Their schedule F (unsecured creditors) listed Leon's as holding a disputed claim of $89,000.

### 2. *Michael v. Smith*

On August 29, 2007, Debtors filed a malpractice suit against Smith, Case No. CV–2007–312, First Judicial District, Boundary County.[6] This suit was filed a little over two months after the closing of their bankruptcy case.

---

**3.** The Court expressly cautioned Debtors and Trustee, when first hearing their preliminary argument in April, 2009, that they would have to provide competent evidence of what events transpired in the state courts and prove the specific facts they alleged and relied upon. Nevertheless, when the matter was finally tried on October 6, the Court was left with an extraordinarily weak record. Only two witnesses (Trustee and attorney Manderson Miles) were called. Debtor argued, but did not testify. And the Court was given little by any party, beyond argument, regarding what had occurred in state court. Thus, in this Decision, the description of events in the state court is drawn from but a few state court documents (*e.g.*, a January 21, 2009, memorandum of decision in CV–2007–312 discussed further below), and from a transcript of several state court hearings evidently prepared for Debtors' appeal to the Idaho Supreme Court. That transcript was marked as Debtors' Exhibit 119, but not offered or admitted. The Court concludes that the transcript carries sufficient indicia of reliability and accuracy that it may be considered. The Court has also reviewed, for background, Debtors' statements regarding the first law-

suit which were made in a letter to Trustee, admitted as Ex. 112.

**4.** The case number suggests that the suit was commenced in 2003.

**5.** Debtors asserted, in Ex. 112, that they were both individual defendants in the suit, and that their closely-held corporation, Mission Holdings Inc., was also a defendant. It is not entirely clear whether the counterclaim was brought only by the corporation or by all defendants, and the Court simply refers to "Debtors" as inclusive of any such claims they asserted through or on behalf of their corporation.

**6.** Neither party provided a copy of the complaint commencing this suit. The date of filing is taken from a recitation in a later ruling by the state court. Additionally, it is unclear whether both Debtors, or just Robert Michael, were named as Plaintiffs. However, since both Debtors have sought "reconsideration" of the sale under the Motion before this Court, the Court will refer to both in connection with the state court action as well.

The transcripts of the various hearings before the state court in this action[7] reflect that, at a May, 2008 status conference, the court scheduled a January, 2009 jury trial. However, Smith thereafter moved for summary judgment in July, 2008, contending that Debtors lacked standing because the cause of action was an asset of their bankruptcy estate and only the bankruptcy trustee had standing to pursue it, and further arguing that Debtors' assertion of the undisclosed asset should also be barred by judicial estoppel. At hearing on that motion, the state court noted that it deemed an important question to be when Debtor gained knowledge of the existence of the malpractice claim. That court denied the motion on the basis of an unresolved factual issue as to when Debtors knew or should have known of the cause. Ex. 119 at transcript of July 22, 2008 hearing, p. 51–52.

### C. Reopening of the bankruptcy

On August 7, 2008, Debtors (now appearing *pro se*) moved to reopen their bankruptcy case. *See* Doc. No. 36. They contended that they "recently discovered the asset of a malpractice lawsuit which occurred pre-petition." *Id.* at 1. In an accompanying affidavit, Doc. No. 37, they indicated that their bankruptcy was in part caused by a state court lawsuit in which they were represented by "the Smiths."[8] Debtors contended that, while they felt Smith "did a poor job on the case," they

did not have any "reason at the time to believe the ineptness rose to the level of any litigation," and, thus, they scheduled no claim against Smith as an asset in their bankruptcy.

■ Debtors' motion was granted and the case reopened by Order entered August 19, 2008. Under Fed. R. Bankr.P. 5010, the Court ordered the United States Trustee to appoint a trustee, and the U.S. Trustee subsequently reappointed Trustee Zimmerman. Doc. No. 38.[9]

### D. *Michael v. Smith* (continued)

In its July, 2008 ruling, the state court had also alluded to a question of the absence of an indispensable party, *i.e.*, Trustee. Smith moved to dismiss the action on that ground, and that motion came before the state court in September, 2008, and again in October, 2008. At the latter hearing, the state court stated that it would not rule until it "ha[d] something from [Trustee]" to clarify the bankruptcy status. *Id.* at transcript of Oct. 15, 2008 hearing, p. 77–78.

### E. Bankruptcy sale

Though Debtors never did amend their bankruptcy schedules to disclose the malpractice lawsuit as an asset, their motion to reopen and their communications with Trustee provided Trustee notice of its assertion.[10]

---

7. *See* Ex. 119, discussed at note 4 *supra*.

8. The reason for the plural reference is unclear but ultimately immaterial.

9. That Order also noted that all other relief sought by Debtors in their motion to reopen would be denied without prejudice. Under Ninth Circuit case law, the process of reopening a bankruptcy under § 350(b) presents only a narrow range of issues, and the Court does not at that point address the merits of

matters that might be raised and argued in the reopened case.

10. Debtors' exhibits reflect numerous communications with Trustee regarding potential treatment of the cause of action through its abandonment, sale, or Trustee's prosecution. Trustee also testified regarding discussions he had with attorney Miles, who represented Smith, over the nature of the suit's claims, the litigation's value, and how Trustee might handle the asset.

On November 6, 2008, Trustee issued a "Notice of Sale by Trustee." Doc. No. 46. The notice indicated that, at an auction to occur on December 8, 2008, Trustee would sell "[a]ll right, title and interest in the cause of action In Re: *Michael v. Smith*, CV07–312, First District Court of the State of Idaho." *Id.* Trustee also stated: "Estimated value [of the asset] is unknown as it is a lawsuit to be prosecuted. The trustee has weighed the cost of litigating, requirement of expert witnesses and other costs. In his judgment this sale is the best resolution for the estate." *Id.*

### F. The sale

The sale occurred as scheduled. Miles and Debtor Robert Michael participated, and were the only bidders. After starting with an opening offer of $2,500.00 and bidding back and forth, Smith, through Miles, purchased the estate's interest in the lawsuit for $16,600.00. *See* Doc. No. 48 (report of sale) (indicating that Smith purchased "All right, title and interest *in the bankruptcy estate's interest* in Case No. CV07–312[.]") (emphasis added).

### 1. The bill of sale

Trustee issued a bill of sale to Smith on December 19, 2008. *See* Ex. 102. It conveyed to Smith:

All right title and interest *of the estate* in the cause of action between the debtor(s) *Robert M. Michael, Plaintiff, v. Stephen F. Smith, Attorney at law*, Chartered, and [sic] Idaho Corporation; Stephen F. Smith, an individual, Case No. CV07–312 in the District Court of the First Judicial District of the State of

Idaho, in and for the county of Boundary.

*Id.* (emphasis added).

### G. Advising the state court

In order to accommodate the state court's desire for an explanation of the treatment of the claim as a bankruptcy asset, Miles prepared an affidavit for Trustee's review and signature. Ex. 100. Trustee testified that he reviewed a draft of this document before signing it, and noticed only one problem—it referred to him as the "United States Trustee" rather than properly as the chapter 7 trustee. With that correction, Trustee executed the affidavit. *Id.*

The affidavit, however, varied from the notice of sale, the report of sale, and the bill of sale in its description of the property sold. The affidavit stated, in part:

3. I [Trustee] took control of *all* right, title, and interest *to this* [sic] *causes of action* in the case of *Robert M. Michael v. Stephen Smith, et al.* Case No. CV07–312 in the District Court of the First Judicial District in and for the County of Boundary.

. . .

5. I sold all the right, title, and interest *to this cause of action* of *Robert M. Michael v. Stephen Smith, et al.* to Stephen Smith on December 8, 2008, at a bid sale. I gave Stephen Smith a Bill of Sale for *all Plaintiff's causes of action*.

Ex. 100 (emphasis added).[11]

The language of the affidavit was inconsistent with the Trustee's bankruptcy documents, which qualified and limited what was sold to "the *estate's* interest" in the litigation. Trustee failed to correct this language before signing the affidavit.[12]

---

11. The affidavit was prepared by Miles. No evidence was presented to suggest that the language used to describe what was sold was intentional and designed to mislead the state

court, rather than being a matter of careless draftsmanship.

12. As with Miles, *see* note 12 *supra*, there was no evidence presented to support the proposi-

As discussed further below, Debtor's primary argument on the Motion now before this Court is that Trustee's affidavit expanded what was, or what could be, properly sold. Debtors claim in submissions to this Court that the state court litigation included certain "post-petition" causes of action that could not be sold by Trustee. They argue that the state court was misled by the affidavit and related submissions from Smith.

## H. Hearings before the state court

Debtors, and to a lesser degree Smith, characterized what transpired in state court. Neither party provided this Court with much in the way of evidence, and reconciling their various descriptions has proven to be largely impossible. In this regard, the Court concludes that what the state court itself said is of more value than the reports and interpretations of the litigants.

On January 21, 2009, the state court in No. CV–2007–312, entered a "Memorandum of Decision and Order granting Defendant's Motion to Dismiss" (the "Dismissal Decision"). On March 16, 2009, that same court entered in such case a "Memorandum Decision and Order: 1) Denying Plaintiff's Motion for Reconsideration of this Court's Order Granting Defendant's Motion to Dismiss, and 2) Denying Plaintiff's Motion to Strike" (the "Reconsideration Decision").[13]

### 1. Dismissal Decision

In the Dismissal Decision, the state court noted some of the history of the litigation, which this Court has set out above. It then noted that even though an earlier motion of Smith to dismiss was moot, a new motion to dismiss had been filed on December 30, 2008. This motion was based on the December 8 bankruptcy sale by Trustee to Smith of "this cause of action Michael had against Smith in this [state court] case." *Id.* at 3. The motion was supported by the affidavit of Trustee, and Smith's argument that "the Bankruptcy Trustee had sold Michael's right title and interest in the case before this [state] Court to Smith." *Id.*

The state court noted that the motion to dismiss was presented at a January 21, 2009 hearing, and that Debtors did not appear at such hearing either in person or telephonically. *Id.* The state court also stated that Debtors had argued, in briefing, that they remained parties to the suit notwithstanding the sale "because the Trustee did not have an interest in the entire lawsuit and therefore only sold the bankruptcy estate's interest." *Id.* at 4 (citing Debtors' memorandum in opposition to the motion to dismiss). The state court rejected this contention: "This argument is without merit and Michael cites no authority for his argument. The cases cited by Michael ... do not support Michael's position." *Id.*

The state court found that Debtors no longer had any interest in the litigation, or standing, and granted Smith's motion to dismiss on that basis.

---

tion that Trustee's actions were intentionally misleading rather than careless.

13. These two decisions of the state court were obtained from that court's website and have been attached to this Decision in PDF format. They are also available at: Memorandum Decision and Order Granting Motion to Dismiss, *Michael v. Smith*, No. CV–2007–312 (Boundary County) (Jan. 21, 2009), http://www.co.

kootenai.id.us/departments/districtcourt/opinions.asp (follow "View File" hyperlink); and Memorandum Decision and Order on Reconsideration, *Michael v. Smith*, No. CV–2007–312 (Boundary County) (Mar. 16, 2009), htt p://www.co.kootenai.id.us/departments/districtcourt/opinions.asp (follow "View File" hyperlink).

## 2. Reconsideration Decision[14]

The Reconsideration Decision reiterated the same history of litigation. *Id.* at 1–3. It noted that a February 2, 2009 judgment of dismissal was entered, and that Debtors filed a motion for reconsideration and related documents on February 3, 2009. *Id.* at 3–4. After a brief, two-page response from Smith, Debtors filed a 67–page memorandum and a motion to strike Trustee's affidavit which they contended was untimely submitted for consideration at the January 21 hearing. *Id.* at 4.

The state court noted that in seeking relief: "Michael argues he had a shared interest with the bankruptcy estate in some causes [fraudulent concealment, breach of contract, and professional negligence/legal malpractice] and these causes of action 'are post-petition and therefore the estate has no interest in them.' " *Id.* at 5 (quoting from Debtors' brief to the state court). It further noted: "Michael asserts his claims for fraud and 'last legal malpractice/professional negligence, with punitive assertions' are such later-acquired assets." *Id.* at 8 (quoting Debtors' brief).

The state court expressly rejected the arguments regarding the post-petition nature of causes in the litigation, finding that "Michael's action against Smith accrued at the time of the occurrence, act, or omission complained of." *Id.* (citing Idaho Code § 5–219(4) and *Tingley v. Harrison,* 125 Idaho 86, 867 P.2d 960 (1994)). Observing that the adverse judgment in *Leon's Mfg. Co. v. Michael* was entered on September 2, 2005, the state court concluded:

> Despite Michael's filing suit against Smith on August 29, 2007, his action accrued on or about September 2, 2005,

*before* his bankruptcy filing on October 13, 2005.

· · ·

> Michael's contention that he has a shared interest with the bankruptcy estate in the fraudulent concealment, breach of contract, and professional negligence/legal malpractice causes of action is related to his contention that state law, not federal law or a bankruptcy trustee, determines who is a party to the lawsuit.... Michael provides no legitimate support for this shared interest proposition. Again, because the alleged occurrences, acts, or omissions complained of took place before commencement of the bankruptcy filing on October 13, 2005, the causes of action accrued before commencement of the bankruptcy case and became part of the bankruptcy estate.... As such, Michael has *no* interest in the cause of action.

*Id.* at 8–10.

The state court therefore rejected Debtors' motion to alter or amend judgment. It further rejected Debtors' claims to relief under Idaho Rule of Civil Procedure 60(b), *id.* at 10–13, and their motion to strike Trustee's affidavit, *id.* at 14–16.

## I. Motion to reconsider sale

While Debtors' February 3 state court motion to reconsider was pending and immediately after their February 25 state court motion to strike, Debtors, on February 29, 2009, filed in this Court a "motion to reconsider" the sale. *See* Doc. No. 51 (the "Motion"). In the Motion and an accompanying brief and affidavit, *see* Doc. Nos. 53, 54, Debtors argued that the affidavit of Trustee provided to the state court

---

**14.** Though the state court's Reconsideration Decision—rejecting the contention of post-petition causes of action—had been issued in March, 2009, Debtors did not present it to this Court in connection with hearing on the Motion. Surprisingly, neither did Trustee or Smith's counsel.

was, or at least evidenced, an attempt to improperly expand the scope and reach of the sale that actually occurred.

Debtors argue that there were "post-bankruptcy causes of action" included in the state court suit. *See, e.g.*, Doc. No. 53 at 3 ("Additionally, debtors found three causes of action which occurred post-petition in 2006 and 2007."); and at 9 (alleging that six prepetition and three post-petition causes of action were involved). They contend that Trustee's sale was, by its terms and under operation of the Bankruptcy Code, incapable of conveying these post-petition causes to Smith.

It was this Motion that was ultimately heard and argued in October, 2009.

## DISCUSSION AND DISPOSITION

Though a host of arguments are presented by Debtors, most can be distilled by focusing on a single point—what could Trustee sell at the noticed § 363 sale in December, 2008? [15]

### A. Cause of action as property of the estate

Section 541(a) of the Code provides that the commencement of a bankruptcy case "creates an estate." That estate "is comprised of" seven categories of property, set out in § 541(a)(1)-(7), "wherever located and by whomever held[.]" With certain exceptions not here relevant, § 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The "proceeds ... or profits of or from property of the estate" are also included. *See* § 541(a)(6).

Debtors' legal and equitable interests in the causes of action against Smith for professional malpractice constituted property of the estate. *In re Lahijani*, 325 B.R. 282, 287 (9th Cir. BAP 2005).[16] *See also Crum v. Tomlinson (In re Hettick)*, 413 B.R. 733, 752 (Bankr. D.Mont.2009) ("[A]ssets of the estate properly include any of the debtor's causes of action.") (citing *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir.2001); other citations omitted). "If the cause of action accrued prior to a debtor's petition date, it is an asset that must be scheduled.... Moreover, the accrued cause of action is property of the estate even if the debtors were unaware of the claim when they filed for bankruptcy protection." *Hettick*, 413 B.R. at 752.[17]

When debtors fail to properly schedule an asset, including a cause of action, the asset remains property of the estate until administered or abandoned formally by the trustee. *Lopez v. Special-*

---

**15.** All statutory references are to the Bankruptcy Code, 11 U.S.Code §§ 101–1330, as it existed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 108–9, 119 Stat. 23 (Apr. 20, 2005), unless otherwise indicated.

**16.** *See also Tingley v. Harrison*, 125 Idaho 86, 867 P.2d 960, 965 (1994) (bankruptcy estate includes, under § 541(a), causes of action including those for legal malpractice).

**17.** *Hettick* further notes that the question of whether a debtor could have brought a cause of action prior to bankruptcy, and thus the action is property of the estate, is often

viewed as a question of when the action "accrued." 413 B.R. at 768–69. That court held that under its state law and *Cusano*, "a claim accrues when an action can be brought." *Id.* at 769. And, "[a]lthough the inquiry as to when an action accrues is different from an inquiry as to when the statute of limitations begins to run, *Cusano, supra,* 'it is often necessary to look to state law on the statute of limitations to determine when a cause of action accrues because accrual rarely is discussed apart from the issue of the running of the statute of limitations.' " *Id.* (quoting *Matter of Swift*, 129 F.3d 792, 796 n. 18 (5th Cir.1997)).

*ty Restaurants Corp. (In re Lopez)*, 283 B.R. 22, 31–32 (9th Cir. BAP 2002); *Hettick*, 413 B.R. at 753.

## B. The sale

A chapter 7 trustee is charged with, among other things, the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." Section 704(1). In performing this obligation, trustees regularly sell property of the estate under § 363. The sale here fell under § 363(b). It was also subject to the requirements of Fed. R. Bankr.P. 6004 and Local Bankruptcy Rule 2002.1.

■ Upon a thorough evaluation of its own record, the Court concludes that Trustee here properly noticed for sale whatever interests Debtors, and thus the estate, may have had in the state court litigation against Smith as of October 13, 2005. Trustee's notice of sale, and bill of sale accurately specified that he could, and did, sell whatever interests *the estate* had in the litigation under § 541(a)(1).

The sale occurred and Smith, appearing through Miles, was the successful bidder.[18] The bill of sale correctly reflected what Smith had bought.

## C. The affidavit and state court rulings

■ Smith, through Miles, and Trustee arguably confused the situation by presenting a too-broadly stated affidavit of Trustee to the state court. That conduct certainly fostered a great deal of litigation before two separate courts. However, the existence of the affidavit does not support the relief sought by Debtors.

Debtors argue to this Court that the affidavit reflects that a separate "sale" of post-petition property occurred, and that such a sale was either improper because it was outside the ability of Trustee to conduct, or objectionable because Debtors were misled or did not have an opportunity to participate in bidding for such property. Debtors contend that such a "sale" must be set aside.

No such "sale" occurred. The affidavit is nothing more than Trustee's testimonial statement of what transpired at the noticed and conducted § 363(b) sale in December, 2008. Per the notice of sale and bill of sale, Trustee sold the estate's right, title and interest in the causes of action, nothing more.

Debtors also appear to argue that the state court was misled by the affidavit, and that somehow this Court should rectify that situation. First and foremost, arguments of this sort must be directed to the state court, not this Court. Second, it appears sufficiently clear—from the Dismissal Decision and the Reconsideration Decision—that the issues raised by this Motion regarding alleged post-petition causes of action were raised to and addressed by the state court, and that the state court was not ruling in mistaken reliance on the broad language of the affidavit.[19] Instead, the state court rendered

---

18. Debtors make several arguments or explanations regarding their decision to bid, and their decision to cease bidding and "allow" Smith's purchase, based on their lay understanding of the Code and the bankruptcy process. *See, e.g.*, Doc. No. 53 at 4. The Court need not address these arguments. In short, *why* Debtors elected to act in the manner they did is not relevant. There was no evidence that Debtors' conduct at the time of sale was a result of any actions by others but, instead, flowed from their unilateral and independent evaluation of the law.

19. None of the litigants—Debtors, Smith or Trustee—gave this Court an adequate record to address the details of any of the state court

a reasoned decision after being made aware of Debtors' arguments that there were post-petition causes of action that survived the bankruptcy sale.

For example, the state court's decisions note that it not only reviewed and considered the affidavit, but also the bill of sale. Moreover, at the March 11, 2009 oral argument on the motion for reconsideration, Debtors were allowed to call Trustee, who testified. Reconsideration Decision at 4.

The Reconsideration Decision further makes sufficiently clear that the state court did not reflexively rule based on any arguable overstatements in the affidavit about what had been sold. Rather, the state court correctly evaluated the accrual of a cause of action for professional negligence/legal malpractice under Idaho law. Reconsideration Decision at 7–10. In doing so, the state court had before it the actual claims asserted by Debtors, including those that Debtors contended arose after the filing of bankruptcy.[20] The state court ruled, however, that *all* claims in the malpractice litigation had reference to the September 2, 2005 judgment entered in *Leon's Mfg. Co. v. Michael*, and had accrued under state law before Debtors filed their bankruptcy case. *Id.* (citing, *inter alia*, Idaho Code § 5–219(4) and *Tingley v. Harrison*, 125 Idaho 86, 867 P.2d 960, 963 (1994)).[21]

## CONCLUSION

Upon the foregoing, the Court concludes that the Motion is not well taken. The § 363 sale of property of the estate by Trustee was properly pleaded, noticed and conducted. Trustee sold to Smith all of the estate's interest in *Michael v. Smith*. That interest included all causes of action

---

20. rulings. However, once the Dismissal Decision and Reconsideration Decision were independently located by the Court and reviewed, it became apparent that the "post-petition claim" issues raised by this Motion had already been raised to and rejected by the state court.

In this regard the state court was in a much better position to evaluate the arguments than is this Court. As noted earlier in this Decision, no party has ever provided copies of the state court complaint or any other state court pleadings (save the affidavit of Trustee) to this Court.

21. A "cause of action for professional malpractice accrues 'as of the time of the occurrence, act or mission complained of[.]' " *City of McCall v. Buxton*, 146 Idaho 656, 201 P.3d 629, 632 (2009) (quoting Idaho Code § 5–219(4)). The cause of action cannot accrue until "some damage" has occurred. *Id.* (citing *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41, 46 (1984) and *Lapham v. Stewart*, 137 Idaho 582, 51 P.3d 396, 400 (2002)).

In the present case, Smith's alleged errors in pleading and in the conduct of the trial in *Leon's Mfg. Co. v. Michael* would have occurred prior to the jury verdict in 2005, and that verdict, imposing liability on Debtors and defeating their counterclaim, would provide "some damage" for purposes of accrual of the cause. *See id.* at 634 ("[O]bjective proof [of some damage] did not occur until there was a court decision adverse to the client because of the attorney's negligence."), and at 636 ("[T]he existence or effect of any alleged negligence on the part of the City's Attorneys regarding their legal advice and strategy depended on the outcome of the litigation against the City[.] There would not be objective proof of actual damage until that occurred.")

For purposes of the statute of limitations on professional malpractice actions, "the limitation period shall not be extended by reason of any continuing consequences or damages resulting [from the act or omission] or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer." *Id.* at 632. Debtor never explained to this Court what acts or omissions of Smith occurred after October 13, 2005, that created causes of action that were legally distinguishable from the alleged prepetition malpractice. Nor, did he explain that argument to the satisfaction of the state court, as evidence by that court's Dismissal and Reconsideration Decisions.

against Smith that constituted property of the estate under § 541(a)(1) as of October 13, 2005. The state court has previously addressed whether there were or are separate causes of action belonging to Debtors that were not sold. Contrary to Debtors' arguments that the state court was misled by the affidavit prepared for and signed by Trustee, the state court ruled, with knowledge of Debtors' contentions about unsold post-petition claims, that there were no such separate claims given the accrual of the cause of action under Idaho state law.

The Motion shall be denied by separate order.

## APPENDIX

**IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE STATE OF IDAHO IN AND FOR THE COUNTY OF BOUNDARY**

Robert Michael, Plaintiff,

v.

Stephen F. Smith et al., Defendants.

No. SCV 2007 312.

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

JOHN T. MITCHELL, District Judge.

## I. PROCEDURAL HISTORY AND BACKGROUND.

Plaintiff Robert Michael (Michael) was represented by attorney defendant Stephen F. Smith in Boundary County case number CV 2003 432, entitled *Leon's Mfg. Co. Inc., et al., v. Robert Michael, et al.* This case resulted in a judgment entered against Michael on September 2, 2005. On October 13, 2005, Michael filed for bankruptcy in Case No. 05–29868–TLM. Affidavit of Bankruptcy Trustee, Barry Zimmerman, p. 1, ¶ 1. The Order of Discharge in that bankruptcy case was filed on January 12, 2007, the bankruptcy was discharged on February 8, 2006, and the bankruptcy was terminated on June 13, 2007.

On August 29, 2007, Michael filed the Complaint in this case alleging legal malpractice by Smith in the *Leon's* case. Michael alleged *inter alia* that Smith failed to properly prepare a counterclaim, failed to properly plead fraud or to request punitive damages for Michael, and committed fraud, misrepresentation, and fraudulent concealment.

Smith moved this Court for an Order of Summary Judgment arguing that since Michael failed to list or mention the instant legal malpractice case in his bankruptcy case, Michael does not have standing to bring this legal malpractice action, and should be judicially estopped from doing so. This Court denied Smith's Motion for Summary Judgment on July 16, 2008.

Smith then filed a Motion to Dismiss this action for failure to join an indispensible party, the bankruptcy trustee, pursuant to I.R.C.P. 12(b)(7). Michael moved for a continuance of the September 2, 2008, hearing on Defendant's Motion to Dismiss in order to determine what, if anything, the Bankruptcy Court would do. At the September 2, 2008, hearing, this Court heard the reasons for Michael's Motion to Continue, and to allow Smith the opportunity to find out what action the bankruptcy trustee might have taken, this Court granted Michael's Motion to Continue the hearing on Smith's Motion to Dismiss, and re-scheduled the Motion to Dismiss for October 15, 2008. At the October 15, 2008, hearing, no additional filings had been made, counsel for Smith represented to the court that Barry Zimmerman had been appointed bankruptcy trustee, that

he had spoken to Zimmerman who indicated he had no intention of coming into this case, that Zimmerman felt that this case should be dismissed as it was never listed as an asset in Michael's bankruptcy case, and that Zimmerman felt he as trustee "owned" this case. The Court indicated that it was uncomfortable dismissing this case unless some admissible evidence regarding the trustee's position was submitted. This Court made it clear on the record that the Motion to Dismiss was not under advisement, and that there would be no ruling on the Motion to Dismiss until an affidavit or sworn testimony from Zimmerman was provided, and that it was up to one of the parties to notice the Motion to Dismiss up for a future hearing. That earlier Motion to Dismiss has never been ruled upon. Again, the focus of that Motion to Dismiss was failure to join an indispensible party. Michael argues this prior motion based on failure to sue an indispensible party is now moot. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant Stephen F. Smith's Motion to Dismiss, pp. 5–6. This Court agrees the prior Motion to Dismiss is now moot.

Barry Zimmerman was appointed Trustee by the Bankruptcy Court and opted not to enter the instant case as a party. On December 8, 2008, Zimmerman sold Smith this cause of action Michael had against Smith in this case. Affidavit of Bankruptcy Trustee Barry Zimmerman, p. 2, ¶¶ 4, 5. Smith filed a new Motion to Dismiss on December 30, 2008. The focus of this Motion to Dismiss was the fact that in Michael's bankruptcy case, which was previously closed was now reopened, the Bankruptcy Trustee had sold Michael's right title and interest in the case before this Court to Smith, and because "the defendant now owns the cause of action and asks, without further costs or delay, that the Court dismiss the action." Motion to Dismiss, p. 2. On January 7, 2009, Michael filed Plaintiff's Opposition to Defendant Stephen F. Smith's Motion to Dismiss. Smith then filed an Affidavit of Bankruptcy Trustee Barry Zimmerman and Defendant's Memorandum in Support of Motion to Dismiss on January 13, 2009. Oral argument was held on January 21, 2009. Counsel for Smith appeared telephonically, Michael did not appear in person or telephonically.

## II. ANALYSIS.

Smith moves this Court to dismiss this action as compromised and settled because the Bankruptcy Trustee has opted to sell Michael's cause of action against Smith, to Smith. Defendant's Memorandum in Support of Motion to Dismiss, p. 4. Smith argues the Trustee had the option to enter this case as a party, to abandon the case outright, or to sell all right, title, and interest in the case. *Id.* at p. 3. Following an auction in which both parties were given the opportunity to bid (Michael was present, Smith's attorney appeared telephonically), Smith was the highest bidder and the Trustee issued Smith a Bill of Sale for all right, title, and interest in the litigation. *Id.* at pp. 3–4.

Michael appears to now argue that, although the Trustee has "abandoned the asset by auctioning the asset", (Plaintiff's Memorandum in Opposition, p. 6), Michael remains an indispensible party to the action because the Trustee did not have an interest in the entire lawsuit and therefore only sold the bankruptcy estate's interest. Plaintiff's Memorandum in Opposition, pp. 11–12. This argument is without merit and Michael cites no authority for his argument. The cases cited by Michael (*Taylor et al v. Maile IV, et al.,* 142 Idaho 253, 127 P.3d 156 (2005); *Christensen Family*

*Trust v. Christensen,* 133 Idaho 866, 993 P.2d 1197 (1999); *Holmes v. Henderson Oil Co.,* 102 Idaho 214, 628 P.2d 1048 (1981); *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *In re Lopez,* 283 B.R. 22 (9th Cir.BAP2002)) do not support Michael's position.

It is beyond cavil that a Trustee may sell a cause of action. 11 U.S.C. § 541(a)(1). "Causes of action owned by the trustee are intangible items of property of the estate that may be sold." *In re Lahijani,* 325 B.R. 282, 287 (9th Cir. BAP 2005). It is the bankrupt estate, created when the bankruptcy action is commenced, that includes all legal or equitable interests held by the debtor at the time the action is commenced. 11 U.S.C. § 541(a). *See Scarlett v. Barnes,* 121 Bankr.578 (Bankr.W.D.Mo.1990) (legal malpractice action is property of the bankrupt estate); *see also Tingley v. Harrison,* 125 Idaho 86, 91, 867 P.2d 960, 965 (1994).

Although dealing with the issue of whether the costs and fees a debtor incurs after reviving a state-court action can be encompassed by a bankruptcy discharge, some of the fact pattern in *In re Ybarra,* 424 F.3d 1018 (9th Cir.2005) is instructive. In that case the debtor had not initially scheduled her cause of action against her employer and the Trustee for the debtor's Chapter 7 bankruptcy estate agreed to settle with the employer "via a compromise in which Rockwell would purchase Ybarra's cause of action for $17,500." 424 F.3d 1018, 1020. "Although Ybarra objected to the proposed compromise, the bankruptcy court approved it on November 12, 1993. Thereafter the state court granted the trustee's and Rockwell's motion to dismiss Ybarra's lawsuit." *Id.* These facts are quite similar to those in the instant matter, however *Ybarra's* facts

then begin to differ as the bankruptcy court later gave Ybarra the option to accept the $17,500 in full satisfaction and release of all claims or to take ownership of all right, title, and interest in the lawsuit, and she chose the latter.

Here, there was an auction by the trustee, attended by both parties who both bid on the cause of action. There is no evidence in the record that Michael objected to the auction or that he objected to the compromise in any way. The Trustee stated that he opted not to enter the case as a party and instead: "I sold all the right, title, and interest in this cause of action of *Robert M. Michael v. Stephen Smith, et al,* to Stephen Smith on December 8, 2007, at a bid sale. I gave Stephen Smith a Bill of Sale for all Plaintiff's causes of action." Affidavit of Bankruptcy Trustee, Barry Zimmerman, p. 2, ¶ 5.

Following the sale, Michael no longer had standing in this matter. Standing is a jurisdictional issue and may be raised at any time. *Hoppe v. McDonald,* 103 Idaho 33, 35, 644 P.2d 355, 357 (1982).

> The doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated ... [T]o satisfy the case or controversy requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury.

*Thomson v. City of Lewiston,* 137 Idaho 473, 477, 50 P.3d 488, 492 (2002). Because Michael has no remaining title, interest or right to his cause of action in this malpractice case before this Court, which malpractice cause of action is now owned by Smith (the party whom Michael alleged committed the malpractice), this Court must grant Defendant's Motion to Dismiss.

## III. ORDER.

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED, this matter is DISMISSED with prejudice against plaintiff Michael in favor of defendant Smith, and defendant Smith is the prevailing party.

IT IS FURTHER ORDERED that the jury trial scheduled to begin March 30, 2009 is VACATED.

### MEMORANDUM DECISION AND ORDER: 1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, AND 2) DENYING PLAINTIFF'S MOTION TO STRIKE

### I. PROCEDURAL HISTORY AND BACKGROUND.

Plaintiff Robert Michael (Michael) was represented by attorney defendant Stephen F. Smith in Boundary County case number CV 2003 432, entitled *Leon's Mfg. Co. Inc., et al., v. Robert Michael, et al.* This case resulted in a judgment entered against Michael on September 2, 2005. On October 13, 2005, Michael filed for bankruptcy in Case No. 05–29868–TLM. Affidavit of Bankruptcy Trustee, Barry Zimmerman, p. 1, ¶ 1. The Order of Discharge in that bankruptcy case was filed on January 12, 2007, the bankruptcy was discharged on February 8, 2006, and the bankruptcy was terminated on June 13, 2007.

On August 29, 2007, Michael filed the Complaint in this case alleging legal malpractice by Smith in the *Leon's* case. Michael alleged *inter alia* that Smith failed to properly prepare a counterclaim, failed to properly plead fraud or to request punitive damages for Michael, and committed fraud, misrepresentation, and fraudulent concealment.

Smith moved this Court for an Order of Summary Judgment arguing that since Michael failed to list or mention the instant legal malpractice case in his bankruptcy case, Michael does not have standing to bring this legal malpractice action, and should be judicially estopped from doing so. This Court denied Smith's Motion for Summary Judgment on July 16, 2008.

Smith then filed a Motion to Dismiss this action for failure to join an indispensible party, the bankruptcy trustee, pursuant to I.R.C.P. 12(b)(7). Michael moved for a continuance of the September 2, 2008, hearing on Defendant's Motion to Dismiss in order to determine what, if anything, the Bankruptcy Court would do. At that hearing on September 2, 2008, this Court heard the reasons for Michael's Motion to Continue. To allow Smith the opportunity to find out what action the bankruptcy trustee might have taken, this Court granted Michael's Motion to Continue the hearing on Smith's Motion to Dismiss, and re-scheduled the Motion to Dismiss for October 15, 2008. At the hearing on October 15, 2008, no additional filings had been made, counsel for Smith represented to the court that Barry Zimmerman had been appointed bankruptcy trustee, that he had spoken to Zimmerman who indicated he had no intention of coming into this case, that Zimmerman felt that this case should be dismissed as it was never listed as an asset in Michael's bankruptcy case, and that Zimmerman felt he as trustee "owned" this case. The Court indicated that it was uncomfortable dismissing this case unless some admissible evidence regarding the trustee's position was submitted. This Court made it clear on the record that the Motion to Dismiss was not under advisement, and that there would be no ruling on the Motion to Dis-

miss until an affidavit or sworn testimony from Zimmerman was provided, and that it was up to one of the parties to notice the Motion to Dismiss up for a future hearing. That earlier Motion to Dismiss has never been ruled upon. Again, the focus of that Motion to Dismiss was failure to join an indispensible party. Michael argues this prior motion based on failure to sue an indispensible party is now moot. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant Stephen F. Smith's Motion to Dismiss, pp. 5–6. This Court agrees the prior Motion to Dismiss is now moot.

Barry Zimmerman was appointed Trustee by the Bankruptcy Court and opted not to enter the instant case as a party. On December 8, 2008, Zimmerman sold Smith the cause of action Michael had against Smith in this case. Affidavit of Bankruptcy Trustee Barry Zimmerman, p. 2, ¶¶ 4, 5. Smith filed a new Motion to Dismiss on December 30, 2008. The focus of this Motion to Dismiss was the fact that in Michael's bankruptcy case, which was previously closed was now reopened, the Bankruptcy Trustee had sold Michael's right, title and interest in the case before this Court to Smith, and because "the defendant now owns the cause of action and asks, without further costs or delay, that the Court dismiss the action." Motion to Dismiss, p. 2. On January 7, 2009, Michael filed Plaintiff's Opposition to Defendant Stephen F. Smith's Motion to Dismiss. Smith then filed an Affidavit of Bankruptcy Trustee Barry Zimmerman and Defendant's Memorandum in Support of Motion to Dismiss on January 13, 2009. On January 21, 2009, this Court granted defendant's Motion to Dismiss. On February 2, 2009, this Court entered a Judgment which granted Smith a judgment of dismissal against Michael.

On February 3, 2009, Michael, *pro se*, filed "Plaintiff's Motion for Reconsideration of Memorandum Decision and Order Granting Defendant's Motion to Dismiss I.R.C.P. 59(E) and 60(B), 11(a)(2)(B) and Enlargement of Time to File an Affidavit Per I.R.C.P. 6(b)(1) & (2)", and an "Affidavit of Plaintiff in Support of Plaintiff's Motion for Reconsideration and Enlargement." On February 5, 2009, Smith, through counsel, filed a two-page "Response to Plaintiff's Motion for Reconsideration." On February 24, 2009, Michael filed a sixty-seven-page "Plaintiff's Memorandum of Points and Authorities in Support of His Motion for Reconsideration and Enlargement of Time". On February 25, 2009, Michael filed "Plaintiff's Motion to Strike Defendant Stephen F. Smith's Memorandum in Support of His Motion to Dismiss, and the Affidavit of Trustee Barry Zimmerman, All Submitted Untimely for the Hearing Held on January 21, 2009." On February 27, 2009, Michael filed "Plaintiff's Reply to Defendant Stephen F. Smith's Response to Plaintiff's Motion for Reconsideration and Enlargement of Time." On March 2, 2009, Smith filed "Defendant's Response to Plaintiff's Motion to Strike Memorandum in Support of Motion to Dismiss and Affidavit of Barry Zimmerman." Oral argument was held on March 11, 2009.

At oral argument, Michael requested the Court allow the testimony of Barry Zimmerman, whom Michael had served a subpoena for the hearing. Zimmerman was allowed to testify.

## II. ANALYSIS.

### A. Motion for Reconsideration Under Rule 11(a)(2)(B).

Michael moves this Court for reconsideration pursuant to I.R.C.P. 11(a)(2)(B), to alter or amend its judgment pursuant to I.R.C.P. 59(e), and for relief of a final

judgment based on mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or other reasons justifying relief under I.R.C.P. 60(b). Idaho Rule of Civil Procedure 11(a)(2)(B) reads:

> A motion for reconsideration of any *interlocutory orders* of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment. A motion for reconsideration of any *order of the trial court made after entry of final judgment* may be filed within fourteen (14) days from the entry of such order . . .

I.R.C.P. 11(a)(2)(B) (emphasis added). A trial court's decision to grant or deny a motion for reconsideration is reviewed for an abuse of discretion. *Jordan v. Beeks,* 135 Idaho 586, 592, 21 P.3d 908, 914 (2001). A party making a motion for reconsideration is permitted to present new evidence, but is not required to do so. *Johnson v. Lambros,* 143 Idaho 468, 147 P.3d 100 (Ct.App.2006). Here, this Court's January 21, 2009, Memorandum Decision and Order Granting Defendant's Motion to Dismiss which dismissed Michael's claims with prejudice was a *final* Order, not an *interlocutory* order. Thus, Michael cannot move for reconsideration pursuant to I.R.C.P. 11(a)(2)(B) as he does not seek reconsideration of an interlocutory order or an order made *after* entry of final judgment.

### B. Motion to Alter or Amend a Judgment under Rule 59(e)

Although it is not clear, Michael appears to seek reconsideration for two substantive reasons: (1) Michael argues he had a shared interest with the bankruptcy estate in some causes [fraudulent concealment, breach of contract, and professional negligence/legal malpractice] and these causes of action "are post-petition and therefore the estate has no interest in them" and (2) Michael argues determination of who is a party to the lawsuit must be determined by state law, not federal law or a bankruptcy trustee. Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, p. 23. As discussed *supra,* reconsideration is not proper here as Rule 11(a)(2)(B) may only be invoked when seeking reconsideration of a Court's interlocutory order or order made after the entry of final judgment. Additionally, though not yet relevant, there can be no reconsideration of any Orders entered on motions filed under Rule 59(e) or 60(b). *See* I.R.C.P. 11(a)(2)(B). Michael's motion must be treated as one to alter or amend a judgment.

"A motion to reconsider a dismissal order properly should be treated as a motion to alter or amend a judgment under I.R.C.P. 59(e) if the motion was timely filed." *Ross v. State,* 141 Idaho 670, 671, 115 P.3d 761, 762 (Ct.App.2005); *Straub v. Smith,* 145 Idaho 65, 71, 175 P.3d 754, 760 (2007). A motion to alter or amend a judgment, pursuant to Rule 59(e) "shall be served not later than fourteen (14) days after entry of the judgment." I.R.C.P. 59(e). In *Straub,* the Smiths made a motion to reconsider under I.R.C.P. 11(a). The Idaho Supreme Court stated:

> However, a party may only make a motion to reconsider interlocutory order or orders entered *after* the entry of final judgment. I.R.C.P. 11(a)(2). The dismissal was a final judgment and, thus, the Smith's motion to reconsider should be treated as a motion to modify or amend the order of dismissal.

*Id.* (emphasis added). Under Rule 59(e) this Court may correct any alleged legal and factual errors. In *Straub,* the Supreme Court reversed the district court's denial of reconsideration, treating the mo-

tion as one to alter or amend under I.R.C.P. 59(e). 145 Idaho 65, 71, 175 P.3d 754, 760. The Smiths had supported their motion with an affidavit alerting the court to the fact that they had stipulated to dismissal with prejudice, but had not agreed to waive costs. *Id.* "Thus, if the court entered the order denying costs and fees because it understood that to be part of the stipulation terms, the Smiths' motion alerted it to the factual error and the motion gave it the opportunity to correct that error." *Id.* Michael's instant motion is treated as one to alter or amend a judgment, but the Court will not consider new evidence in motions to alter or amend under I.R.C.P. 59(e).

Rule 59(e) motions were discussed by the Idaho Supreme Court in *Coeur d'Alene Mining Co. v. First National Bank of Idaho,* where the Court stated:

> A Rule 59(e) motion to amend a judgment is addressed to the discretion of the court. An order denying a motion made under rule 59(e) to alter or amend a judgment is appealable, but only on the question of whether there has been a manifest abuse of discretion. Rule 59(e) proceedings afford the trial court the opportunity to correct both errors of fact and law that had occurred in its proceedings; it thereby provides a mechanism for corrective action short of an appeal. Such proceedings must of necessity, therefore, be directed to the status of the case as it existed when the court rendered the decision upon which the judgment is based.

118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990) (quoting *Lowe v. Lym,* 103 Idaho 259, 263, 646 P.2d 1030, 1034 (Ct.App. 1982)).

Here, Michael seeks an enlargement of time in which to "seek either another affidavit from the trustee, he has been contacted once each in by [sic] person, tele-phone, and email, and also to file with the U.S. Bankruptcy Court for the District of Idaho for an interpretation of pertinent bankruptcy law questions", but such a request is not permitted under Rule 59(e). "Because Rule 59(e) motions are brought after judgment, new evidence may not be presented with such motions." *Johnson v. Lambros,* 143 Idaho 468, 471–72, 147 P.3d 100, 103–04, n. 3. Michael's request that this Court alter or amend its judgment of dismissal therefore must be considered only in light of the "status of the case as it existed when the court rendered the decision upon which the judgment is based." *Coeur d'Alene Mining,* 118 Idaho 812, 823, 800 P.2d 1026, 1037. Michael's request for an extension of time to file an affidavit by the Trustee must be denied, at least for purposes of his I.R.C.P. 59(e) motion.

Again, it is unclear, but it appears Michael argues federal bankruptcy law should not have been applied to assets Michael acquired post-bankruptcy petition. Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, p. 43. Michael asserts his claims for fraud and "last legal malpractice/professional negligence, with punitive assertions" are such later-acquired assets. *Id.* Michael states the Court wrongfully relied on the trustee's decision (presumably to sell the causes of action in *Robert M. Michael v. Stephen Smith, et al.*) because the trustee erred in determining "how to apply bankruptcy law to plaintiff's Idaho civil law suit [sic]." *Id.,* p. 47. This is apparently a legal error which Michael attributes to this Court. What Michael continues to be mistaken about is that his instant claims arose out of *Leon's Mfg. Co. Inc., et al., v. Robert Michael, et al.* (CV 2003 432, Boundary County). In *Leon's,* Michael was represented by the instant defendant Smith and the case resulted in a judgment against Michael on September 2, 2005. On Octo-

ber 13, 2005, Michael filed for bankruptcy and the bankruptcy was discharged on February 8, 2006. On August 29, 2007, Michael filed a complaint in the instant case alleging malpractice by Smith in the *Leon's* case. Thus, Michael's action against Smith accrued at the time of the occurrence, act, or omission complained of. I.C. § 5–219(4); *Tingley v. Harrison,* 125 Idaho 86, 89, 867 P.2d 960 (1994) ("Idaho Code § 5–219(4) provides a two-year statute of limitations for professional malpractice causes of action. It also provides that the cause of action accrues at the time of the occurrence, act, or omission complained of."). Despite Michael's filing suit against Smith on August 29, 2007, his action accrued on or about September 2, 2005, before his bankruptcy filing on October 13, 2005. *See Tingley,* 125 Idaho 86, 89, 867 P.2d 960, 963 ("In this case, as a matter of law, the latest possible date that Tingley's malpractice cause of action accrued under I.C. § 5–219(4) is November 16, 1983, the date the underlying personal injury action was dismissed").

It is without question that federal bankruptcy law determines the scope of a debtor's bankruptcy estate. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). As this Court has previously stated, it is the bankrupt estate, created when the bankruptcy action is commenced, that includes all legal or equitable interests held by the debtor at the time the action is commenced. 11 U.S.C. § 541(a). *See Scarlett v. Barnes,* 121 B.R. 578 (Bankr.W.D.Mo. 1990) (legal malpractice action is property of the bankrupt estate); *see also Tingley v. Harrison,* 125 Idaho 86, 91, 867 P.2d 960, 965. The Fifth Circuit Court of Appeals has explained:

> [S]tate law determines only whether a cause of action accrued to the debtor *as of the commencement of the bankruptcy case.* Once that determination has been made, federal law controls whether a trustee can maintain the cause of action on behalf of the bankruptcy estate. Federal law provides that when a legal malpractice cause of action has accrued to a debtor as of the commencement of the bankruptcy case, it becomes part of the debtor's bankruptcy estate.

*In re Segerstrom,* 247 F.3d 218, 224 (5th Cir.2001). (emphasis in original). In *Segerstrom,* the Court determined that a legal malpractice claim had accrued according to Texas law. Segerstrom never denied or waived the malpractice action prior to commencement of her bankruptcy and therefore, the Court concluded that where no tenable basis in federal law was provided for withholding Segerstrom's legal malpractice claim from her bankruptcy estate, "we conclude that the estate can pursue the claim." *Id.* Similarly, the cause of action in the instant matter accrued according to Idaho law on or about September 2, 2005, *before* Michael's bankruptcy filing on October 13, 2005. And federal law provides a cause of action accruing before commencement of a bankruptcy case becomes part of the bankruptcy estate. *Segerstrom,* 247 F.3d 218, 224.

Michael's contention that he has a shared interest with the bankruptcy estate in the fraudulent concealment, breach of contract, and professional negligence/legal malpractice causes of action is related to his contention that state law, not federal law or a bankruptcy trustee, determines who is a party to the lawsuit. *See* Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, p. 23. Michael provides no legitimate support for this shared interest proposition. Again, because the alleged occurrences, acts, or omissions complained of took place before the bankruptcy filing on October 13,

2005, the causes of action accrued before commencement of the bankruptcy case and became part of the bankruptcy estate. *See, supra.* As such, Michael has *no* interest in the cause of action. "As a general matter, upon filing of a petition for bankruptcy, '*all* legal or equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors." *Rousey v. Jacoway,* 544 U.S. 320, 325, 125 S.Ct. 1561, 1565, 161 L.Ed.2d 563 (2005); 11 U.S.C. § 541(a)(1) (emphasis added). There is absolutely no support for Michael's contentions. Michael's request to alter or amend this Court's dismissal fails.

### C. Motion for Relief from Final Judgment.

A motion for relief from a final judgment, pursuant to I.R.C.P. 60(b), is committed to the sound discretion of the trial court. *Clear Springs Trout Co. v. Anthony,* 123 Idaho 141, 143, 845 P.2d 559, 561 (1992); *Johnston v. Pascoe,* 100 Idaho 414, 599 P.2d 985 (1979). Denial of an I.R.C.P. 60(b) motion is reviewed for an abuse of discretion. *Alderson v. Bonner,* 142 Idaho 733, 743, 132 P.3d 1261, 1271 (Ct.App. 2006). Where a motion invokes discretionary grounds for relief from a judgment, the standard is review is abuse of that discretion. *Knight Ins., Inc. v. Knight,* 109 Idaho 56, 704 P.2d 960 (Ct.App.1985). Where the grounds are non-discretionary, as when a judgment is void, the question presented is one of law over which reviewing courts exercise free review. *Id.*

As stated *supra,* Michael's reasoning is flawed. While Michael argues throughout his sixty-seven-page memorandum that it was the Court and opposing counsel who erred, Michael has shown no legitimate basis for those aspersions. This Court properly applied state and federal law to

Smith's Motion to Dismiss and there has been no evidence or argument presented by Michael of any mistake, inadvertence, surprise or excusable neglect on his part. *See* I.R.C.P. 60(b)(1). In Michael's Motion for Reconsideration, Michael states (under the heading Procedural Background) that during the 1:30 p.m. hearing to dismiss, he was at the Trustee's office "discussing his affidavit and its origin, its extra-federal judicial, and its significant errors of fact and law." Motion for Reconsideration, p. 3. Michael admits it was an error on his part to arrive at 2:30 p.m. for what he erroneously believed to be a 3:00 p.m. hearing. *Id.* Michael also states it was excusable neglect on his part to have neglected to "endeavor to endeavor to get something before this court to point out all the problems with this latest motion to dismiss." *Id.,* p. 6. However, no showing of excusable neglect in this regard has been made. Excusable neglect is determined by examining what might be expected of a reasonably prudent person under similar circumstances. *Johnson v. Pioneer Title Co.,* 104 Idaho 727, 662 P.2d 1171 (Ct.App.1983). Neither being wrong about a properly noticed-up hearing time or failing to continue the hearing to procure additional evidence is acting as a reasonably prudent person would under similar circumstances.

There has been no showing of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial. I.R.C.P. 60(b)(2). In an abundance of caution, the Court allowed Michael to examine the Bankruptcy Trustee Barry Zimmerman as a witness at the March 11, 2009, hearing. Zimmerman's testimony added no credence to Michael's misguided legal arguments and inaccurate factual claims. As this matter was dismissed with prejudice, Michael can-

not move for a new trial and Rule 60(b)(2) is inapplicable.

Michael now alleges fraud, misconduct, and/or misrepresentation on the part of both the Court and opposing counsel throughout his Memorandum. Michael states the Court: refused to acknowledge submission on his motion for default judgment and misstated the law and facts; allowed late filings by Smith; the Court coached and advocated for Smith; used its own fax machine to transmit materials to Michael; and summarily dismissed the matter in its Memorandum Decision and Order, reaching flawed findings of fact and conclusion of law, *inter alia.* Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, pp. 59–65. Michael claims Smith's attorney Manderson Miles: presented hearsay testimony; changed his "story" regarding trying to buy the case or not; engaged in "antic" and was "playing both sides and got caught"; and served copies of filings to Michael in an untimely fashion, *inter alia.* Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, pp. 13–22. Even if true, none of these allegations meet the requirements of Rule 60(b)(3). *See Anderton v. Herrington,* 113 Idaho 73, 741 P.2d 360 (Ct.App.1987) (Perjury or misrepresentation by a party or witness does not constitute the fraud contemplated by I.R.C.P. 60); *Compton v. Compton,* 101 Idaho 328, 334, 612 P.2d 1175, 1181 (1980) (Fraud, for the purposes of this rule, requires more than interparty misconduct and "will be found only in the presence of such 'tampering with the administration of justice' as to suggest 'a wrong against the institutions set up to protect and safeguard the public' ".)

Rule 60(b)(4) allows relief from a void judgment, but generally only where a court lacks the jurisdiction to enter judgment, such as where the court lacks either personal jurisdiction or subject-matter jurisdiction. *See Catledge v. Transport Tire Co.,* 107 Idaho 602, 607, 691 P.2d 1217, 1222 (1984). Michael has not alleged any jurisdictional defect. Michael has also not set forth any evidence that the "judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated" such that the dismissal with prejudice would no longer be equitable. *See* I.R.C.P. 60(b)(5).

Finally, Michael can point to no reasons justifying relief from the operation of the dismissal. Idaho Rule of Civil Procedure 60(b)(6) was not intended to allow a Court to reconsider the legal basis for its original decision. *First Bank & Trust v. Parker Bros., Inc.* 112 Idaho 30, 32, 730 P.2d 950, 952 (1986). For all of the reasons set forth, Michael's request for relief from the dismissal with prejudice is denied.

## D. Motion to Reconsider Order Denying Default Judgment.

Michael also seeks reconsideration of the Court's denial of his application for default judgment. Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, p. 41. Michael argues the Court erred in failing to address his motion for default judgment and that he did file a three-day notice of intent to take default as required by I.R.C.P. 55(b)(2). *Id.,* p. 67. Michael filed Applications for Entry of Default on April 18, 2008. Michael filed his Motion for Default Judgment on the same date. This Court, at a status conference on May 7, 2008, informed Michael that default could not be sought against a party who had appeared when no three-day notice had been filed. Having not moved for reconsideration within fourteen days as required by Rule 11(a)(2)(B), Michael is now time-barred

from requesting reconsideration of this issue. Granting or denying a motion for reconsideration is left to the sound discretion of this Court. *Jordan v. Beeks,* 135 Idaho 586, 592, 21 P.3d 908, 914 (2001). Under the facts of this case, denial of the motion is proper.

## E. Motion to Strike.

It is only Michael's Motion to Strike which Smith addresses in his briefing. *See* Response to Plaintiff's Motion for Reconsideration, filed February 5, 2009, and Smith's Response to Plaintiff's Motion to Strike Memorandum in Support of Motion to Dismiss and Affidavit of Barry Zimmerman, filed March 2, 2009. Michael moves this Court for an Order Striking Defendant's Memorandum in Support of Motion to Dismiss and Affidavit of Barry Zimmerman, filed January 5, 2009, and January 13, 2009, respectively, as being untimely filed for the hearing on the Motion to Dismiss held January 21, 2009. Michael argues Smith improperly filed his Motion to Dismiss on January 5, 2009, by not serving the Affidavit of Barry Zimmerman on that date. Plaintiff's Motion for Reconsideration, p. 5. Michael states he did not receive the Affidavit until January 15, 2009, and takes issue with not having been served by fax as he had been in the past as well as his not having the opportunity to file an opposing affidavit. *Id.* Michael argues the Motion to Dismiss filed January 5, 2009, was not timely. Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, p. 19. However, I.R.C.P. 7(b)(3) requires only that a written motion, and notice of hearing thereon, be served so that it is received no later than fourteen days before time of hearing. I.R.C.P. 7(b)(3)(A). In the instant issue, Michael himself concedes he received service on January 5, 2009, six-

teen days before hearing. *Id.,* p. 19. And as Smith points out, Michael never requested more time, never submitted reasons why the hearing should not be held on January 21, 2009, and ultimately failed to preserve his objection thereto by failing to appear. Defendant's response to Plaintiff's Motion to Strike, p. 2.

Michael next argues on January 15, 2009, he received Smith's memorandum supporting the motion along with the Bill of Sale, a copy of *In re Lopez,* and the Trustee's Affidavit. Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, p. 20. Michael had filed his Opposition to Defendant's Motion to Dismiss on January 7, 2009. Michael states his receipt of the memorandum and supporting documents, filed on January 13, 2009, and received by him on January 15, 2009, was untimely and any affidavit should have been filed with the motion itself on January 5, 2009. Memorandum of Points and Authorities on Reconsideration and Enlargement of Time, pp. 20–21. Smith responds the Trustee's Affidavit was filed in support of Smith's reply memorandum, which was filed in response to Michael's Opposition to the Motion to Dismiss. Defendant's Response to Plaintiff's Motion to Strike, p. 3. As such, Smith argues I.R.C.P. 7(b)(3)(E) requires the reply memorandum and supporting documents need only be filed two days before hearing. *Id.*

A plain reading of the Idaho Rules of Civil Procedure shows affidavits supporting motions shall be served with the motion. I.R.C.P. 7(b)(3)(B). Thus, while reply briefs need only be served so that they are received two days before hearing on the matter, the filing of affidavits must comply with Rule 7(b)(3)(B). Nevertheless, the Idaho Court of Appeals has stated notice rules are not jurisdictional and do not provide grounds for reversal on appeal

where a party has no substantive defense to the motion and is not prejudiced by inadequate notice. *Keeven v. Estate of Keeven,* 126 Idaho 290, 882 P.2d 457 (Ct. App.1994). Here, Michael received the Bill of Sale sixteen days before hearing. It is unlikely he was prejudiced by not receiving in a timely fashion an affidavit setting forth the circumstances of that Bill of Sale, memorializing what occurred at the very sale at which Michael was present. Certainly Michael has not articulated any prejudice.

Finally, Michael's failure to appear at the hearing on the motion to dismiss was not the result of excusable neglect. *See supra.* Michael had made a ninety-mile trip to Kootenai County, erred as to the time of the hearing and spent the hearing time at the Bankruptcy Trustee's office. This is not what might be expected of a reasonably prudent person under similar circumstances. *See Johnson v. Pioneer Title Co.,* 104 Idaho 727, 662 P.2d 1171 (Ct.App.1983). As such, Michael did not object, and his claim that this Court improperly considered hearsay evidence must fail.

## III. ORDER.

IT IS HEREBY ORDERED "Plaintiff's Motion for Reconsideration of Memorandum Decision and Order Granting Defendant's Motion to Dismiss I.R.C.P. 59(E) and 60(B), 11(a)(2)(B) and Enlargement of Time to File an Affidavit Per I.R.C.P. 6(b)(1) & (2)" is DENIED.

IT IS FURTHER ORDERED "Plaintiff's Motion to Strike Defendant Stephen F. Smith's Memorandum in Support of His Motion to Dismiss, and the Affidavit of Trustee Barry Zimmerman, All Submitted

Untimely for the Hearing Held on January 21, 2009" is DENIED.