# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 19-6040

_____

In re: Christopher L. Boisaubin

*Debtor*

------------------------------

Christopher L. Boisaubin

*Debtor - Appellant*

v.

Robert J. Blackwell

*Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri – St. Louis

_____

Submitted: April 3, 2020
Filed: May 14, 2020

_____

Before SALADINO, Chief Judge, NAIL, and SANBERG, Bankruptcy Judges.

_____

SANBERG, Bankruptcy Judge.

Christopher L. Boisaubin ("Debtor" or "Appellant") appeals three orders entered by the Bankruptcy Court[1] on November 18, 2019.  The orders: 1) granted Trustee's Second Motion to Compromise Controversy; 2) denied an Agreed Motion to Seal; and 3) denied Debtor's Motion to Seal.  Robert J. Blackwell is the appointed successor Chapter 7 Trustee of Appellant's Missouri Bankruptcy estate ("Trustee").  The orders relate to Trustee's settlement of Appellant's sexual assault claim (the "Claim") against the Marianist Province of the United States ("Marianist Province," and together with Trustee, the "Appellees.").  The Claim had not been disclosed initially in Appellant's current and prior bankruptcy case filings.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b).  For the reasons stated below, we affirm.

## BACKGROUND

There are three separate cases involved in this appeal:

First, Appellant's Chapter 7 bankruptcy case (with his then-wife) filed on March 6, 1990, in the United States Bankruptcy Court for the Northern District of Illinois (the "Illinois Bankruptcy").[2]  Appellant received a discharge in August 1990, and the case was initially closed in October 1990.

Second, Appellant's instant Chapter 7 bankruptcy case filed on January 30, 2009 (the "Missouri Bankruptcy").[3]  The original Chapter 7 Trustee filed a Report of No Distribution on February 25, 2009, and Appellant received a discharge on April 28, 2009.

---

[1] The Honorable Charles E. Rendlen, United States Bankruptcy Judge for the Eastern District of Missouri.

[2] Case No. 90-04199.

[3] Case No. 09-40688.

Third, Appellant's civil action pursing the Claim in Missouri state court filed on April 9, 2014 (the "State Court Action").[4] The alleged perpetrator of the sexual assault, now deceased, was a member of the Marianist Province and faculty at Appellant's high school. The assault allegedly occurred in the early 1970s. Appellant asserted that due to his repressed memory of the assault, the statute of limitations on the Claim had not run under Missouri law at the time he filed the State Court Action.[5]

Appellant failed to disclose the Claim prior to the initial closing of either the Illinois Bankruptcy or Missouri Bankruptcy. Appellant disclosed these two bankruptcy cases in the State Court Action, and on May 18, 2017, Marianist Province filed a motion for summary judgment in that action for Appellant's lack of standing.

Appellant filed a motion to reopen this case on June 26, 2017, and a motion to reopen the Illinois Bankruptcy on July 17, 2017, in order to disclose the Claim. The Bankruptcy Court reopened this case on July 11, 2017, and appointed Trustee as the successor trustee on July 18, 2017. The Illinois Bankruptcy Court initially denied the motion to reopen,[6] but subsequently granted it,[7] and the Illinois Bankruptcy was reopened on December 1, 2017. On September 19, 2018, the trustee in the Illinois Bankruptcy filed a Report of No Distribution.

---

[4] *Boisaubin v. Marianist Province*, Case No. 14SL-CC01131.

[5] Appellant asserts that he recovered his memory of the assault in 2012.

[6] The original records for the Illinois Bankruptcy had been destroyed, and the bankruptcy court found that reopening the case to administer the Claim would have been of inconsequential value and unduly burdensome.

[7] Appellant filed a motion for relief from judgment, which was joined by Trustee.

- 3 -

After the Illinois Bankruptcy trustee filed the Report of No Distribution, Trustee sought to settle the Claim in the Missouri Bankruptcy and on July 10, 2019, Trustee filed a motion to settle the Claim in this appeal (the "Proposed Settlement"). No creditor objected to the Proposed Settlement, but Appellant opposed the motion. On August 13, 2019, the Bankruptcy Court held a hearing on the Proposed Settlement where, for the first time, Appellant argued that the Claim is not property of the Missouri Bankruptcy estate.

After the hearing on the Proposed Settlement was held, but before an order was entered, Marianist Province and Appellant submitted motions to file documents under seal that they believed were related to damages for the alleged sexual assault. The parties filed an Agreed Motion to Seal on August 23, 2019, and Appellant filed a separate Motion to Seal on August 24, 2019.

On November 18, 2019, the Bankruptcy Court entered orders approving the Proposed Settlement and denying both motions to file under seal.

Briefly, in the order approving the Proposed Settlement, the Bankruptcy Court held that the Claim is property of the Missouri Bankruptcy estate under 11 U.S.C. § 541, and applied the *Lovald* factors to hold that the Proposed Settlement was in the best interest of the estate and fell within the range of reasonableness.[8] The orders denying the motions to file under seal held that the motions were overbroad,[9] procedurally defective,[10] and that most of the documents to be submitted were either

---

[8] *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008).

[9] Regarding Appellant's Motion to Seal, the Bankruptcy Court expressed concern that the documents to be submitted from different state court cases tried by Appellant's counsel, with different plaintiffs and different facts, were irrelevant or introduced for an improper purpose under the Federal Rules of Evidence.

[10] The Bankruptcy Court held that the motions did not properly plead that the documents to be submitted under seal met the relevant federal standards.

part of the public record or had previously been filed with the Bankruptcy Court. Further, the parties had failed to argue that the documents were not given appropriate weight by Trustee in settling the Claim.

Appellant timely appealed the Bankruptcy Court's orders, filing his Notice of Appeal on November 27, 2019. The Panel held oral argument on April 3, 2020.

## ISSUES ON APPEAL

The issues on appeal are: 1) whether the Bankruptcy Court erred in finding that the Claim is property of the Missouri Bankruptcy estate; 2) whether the Bankruptcy Court erred in approving the Proposed Settlement; and 3) whether the Bankruptcy Court erred in denying the motions to file under seal.

## STANDARD OF REVIEW

We review the Bankruptcy Court's conclusions of law *de novo*.[11] Whether property is included in the bankruptcy estate is a question of law.[12]

We review the Bankruptcy Court's approval of the Proposed Settlement for plain error or abuse of discretion.[13] We also review its orders denying the motions to file under seal for an abuse of discretion.[14] An abuse of discretion occurs "if the court bases its ruling on an erroneous view of the law or on a clearly erroneous

---

[11] *Raynor v. Walker* (*In re Raynor*), 602 B.R. 703, 707 (B.A.P. 8th Cir. 2019); *see Islamov v. Ungar* (*In re Ungar*), 633 F.3d 675, 678–79 (8th Cir. 2011).

[12] *Parsons v. Union Planters Bank* (*In re Parsons*), 280 F.3d 1185, 1188 (8th Cir. 2002).

[13] *Lovald*, 525 F.3d at 654.

[14] *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018).

assessment of the evidence."[15]  We turn first to the approval of the Proposed Settlement.

## DISCUSSION

The primary issue here is whether the Claim is property of the Missouri Bankruptcy estate.  The Bankruptcy Court held that upon abandonment in the Illinois Bankruptcy, the Claim reverted back to Appellant as of the petition date for the Illinois Bankruptcy pursuant to 11 U.S.C. § 554.  Thus, when Appellant filed the Missouri Bankruptcy in 2009, the Claim was property of the estate.

I.    Estate Property

Appellant concedes that the Claim was property of the Illinois Bankruptcy estate.  Although no formal order of abandonment was entered, the Bankruptcy Court held that sufficient evidence in the record supported a finding of abandonment by operation of law.  In this appeal, Appellant argues that upon abandonment by the Illinois Bankruptcy trustee, the Claim reverted solely to his control and did not become part of the Missouri Bankruptcy estate.[16]

We first turn to what constitutes "property of the estate."  It is defined broadly and includes "all legal or equitable interests of the debtor in property as of the commencement of the case," and any "interest in property that the estate acquires after the commencement of the case."[17]  It also includes contingent interests in property.[18]

---

[15] *Lovald*, 525 F.3d at 654 (citations and internal quotation omitted).

[16] The parties agree that the Claim was abandoned in the Illinois Bankruptcy.

[17] 11 U.S.C. §§ 541(a)(1), (a)(7).

[18] *Longaker v. Boston Sci. Corp.*, 715 F.3d 658, 661 (8th Cir. 2013); *Stoebner v. Wick* (*In re Wick*), 276 F.3d 412, 415 (8th Cir. 2002); *see Segal v. Rochelle*, 382

Property of the estate includes causes of action that a debtor could have brought at the time of filing a petition.[19]  While Appellant asserts that he did not have a cause of action at the time he filed his bankruptcy cases because he did not regain his memory of the alleged assault until 2012, a cause of action is property of the estate even if a debtor was not aware of it.[20]  Here, it is the alleged sexual assault that constitutes the cause of action, not the recovery of his memory.  Thus, because the assault occurred many years prior to the filing of Appellant's first bankruptcy case, it was a prepetition cause of action included in property of the estate.[21]

---

U.S. 375, 379 (1966) ("To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."); *In re Carlton*, 309 B.R. 67, 71 (Bankr. S.D. Fla. 2004) ("[Section 541(a)(1)] sweeps into the bankruptcy estate all interests held by the debtor-even future, non-possessory, contingent, speculative, and derivative interests."). *See generally Longaker v. Boston Sci. Corp.*, 872 F. Supp. 2d 816, 822 (D. Minn. 2012) (collecting cases).

[19] *Peoples v. Radloff* (*In re Peoples*), 764 F.3d 817, 820 (8th Cir. 2014); *Moratzka v. Morris* (*In re Senior Cottages of Am., LLC*), 482 F.3d 997, 1001 (8th Cir. 2007); *United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 913 (8th Cir. 2001).

[20] 5 Collier on Bankruptcy ¶ 541.07 (16th ed. 2019) (providing that the estate includes even those causes of action of which the debtor was not aware of prior to the petition date); *see Longaker*, 715 F.3d at 661–62; *see Segal*, 382 U.S. at 379–80; *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461–62 (6th Cir. 2013) (collecting cases); *Simmerman v. Ocwen Fin. & Mortg. Servs., Inc.* (*In re Simmerman*), 563 B.R. 47, 54–55 (Bankr. S.D. Ohio 2011); *In re Michael*, 423 B.R. 323, 330 (Bankr. D. Idaho 2009); *see also In re Alvarez*, 224 F.3d 1273, 1276 n.7 (11th Cir. 2000) ("[A] cause of action can accrue for ownership purposes in a bankruptcy proceeding before the statute of limitations begins to run.").

[21] *Longaker*, 715 F.3d at 661–62; *see Segal*, 382 U.S. at 379–80; *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461–62 (6th Cir. 2013) (collecting cases); *Simmerman v. Ocwen Fin. & Mortg. Servs., Inc.* (*In re Simmerman*), 563 B.R. 47, 54–55 (Bankr. S.D. Ohio 2011).  *See supra* notes 18–19.

Property of the estate remains in the estate until it is administered, abandoned, or when the case closes (if the property has been disclosed).[22] The Bankruptcy Court deemed the Claim abandoned in the Illinois Bankruptcy.[23] When property is abandoned under Section 554, control over that property is revested in the debtor or the party with the possessory interest in it as if the bankruptcy never happened.[24]

Appellant argues the Claim could not have been part of the Missouri Bankruptcy estate when he filed his petition in 2009 because it was still property of the Illinois Bankruptcy estate. This is correct. However, at the time that Appellant filed the Missouri Bankruptcy, he had a contingent reversionary interest in the Claim, because it had not yet been administered and remained property of the estate in the Illinois Bankruptcy.[25] When the trustee chose not to administer the Claim in

---

[22] Property abandoned by the trustee or on request of a party in interest is no longer property of the estate. 11 U.S.C. §§ 554(a)–(b). Property scheduled by a debtor and not otherwise administered is abandoned at the close of the case. *Id.* § 554(c). Unadministered property that was unscheduled and, therefore, not abandoned under Section 544(c) remains property of the estate. *Id.* § 544(d); *see* 5 Collier on Bankruptcy ¶ 554.01 (16th ed. 2019).

[23] Here, the Claim was not disclosed initially in either the Illinois Bankruptcy or Missouri Bankruptcy. After the two bankruptcy cases were reopened, the Claim was scheduled in both cases.

[24] Although a debtor is usually the party with the possessory interest, in some instances it may be some other party. 5 Collier on Bankruptcy ¶ 554.02[3] (16th ed. 2019) (citing the legislative history of Section 554); *e.g.*, *Dewsnup v. Timm* (*In re Dewsnup*), 908 F.2d 588, 590 (10th Cir. 1990), *aff'd*, 502 U.S. 410 (1992); *In re Malden Mills Indus., Inc.*, 303 B.R. 688, 700 (B.A.P. 1st. Cir. 2004) (citing the legislative history of Section 554); *In re Flintkote Co.*, 486 B.R. 99, 121 (Bankr. D. Del. 2012); *In re BH S & B Holdings LLC*, 435 B.R. 153, 161 (Bankr. S.D.N.Y. 2010); *see Brown v. O'Keefe*, 300 U.S. 598, 602 (1937).

[25] A reversionary interest is "any future interest left in a transferor or his successor in interest," and arises when the grantor "transfers less than his entire interest" and it is "either certain or possible that [the grantor] will retake the

the Illinois Bankruptcy, however, it revested in the entity that held the contingent reversionary interest in the Claim—here, the Missouri Bankruptcy estate.[26]

At oral argument, Appellant agreed that contingent interests may be part of the bankruptcy estate, but argued that the Claim here was subject to the complete discretion of the Illinois Bankruptcy trustee and thus could not become property of the Missouri Bankruptcy estate. In support, Appellant cited *Seaver v. Klien-Swanson*, which held that a debtor had no legal interest in potential future bonuses because the employer had complete discretion in awarding bonuses and had not decided whether to grant bonuses at the time of the bankruptcy petition filing.[27] There, the debtor had nothing more than a hope for a bonus.[28] *Seaver* is inapplicable here because Appellant had a legal property interest in the Claim, a contingent reversionary interest, at the time he filed the Missouri Bankruptcy regardless of whether the Illinois Bankruptcy trustee decided to pursue it.[29]

Finally, Appellant argues that the Bankruptcy Court erred by stating that the Claim was abandoned *nunc pro tunc* under Section 554. At oral argument, Appellant

___

transferred interest at a future date." *Marvin M. Brandt Revocable Tr. v. United States.*, 572 U.S. 93, 105 n.4 (2014) (citing Restatement (First) of Property § 154(1) (1936)).

[26] Contingent, reversionary interests in property are considered property of the estate under Section 541(a). *See In re Graves*, 609 F.3d 1153, 1156–57 (10th Cir. 2010) (collecting cases).

[27] *Seaver v. Klien-Swanson* (*In re Klien-Swanson*), 488 B.R. 628, 633 (B.A.P. 8th Cir. 2013).

[28] *Id.* at 635; *see Drewes v. Vote* (*In re Vote*), 276 F.3d 1024, 1026–27 (8th Cir. 2002) (distinguishing between an existing, contingent interest with some potential value, and a mere hope).

[29] *See Gebert*, 260 F.3d at 913; 5 Collier on Bankruptcy ¶ 541.07 (16th ed. 2019).

cited the recent United States Supreme Court decision rejecting the improper use of *nunc pro tunc* orders in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano* for support.[30] We disagree with Appellant's argument. The Supreme Court's opinion was referring to those orders that attempted to create a fact in the past, rather than a true *nunc pro tunc* order, which corrects a mistake in the record to make the record accurately reflect a past event that had actually occurred. As the Supreme Court stated: "[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact."[31] Rather, a "true" *nunc pro tunc* order is one that corrects the record to "reflect the reality of what has already occurred."[32] Here, there was neither a correction of the record nor the creation of facts. There was simply an application of the Bankruptcy Code's revesting upon abandonment as of the date of the filing of a petition pursuant to Section 554, as discussed above. Appellant's argument has no merit.

We hold that the Bankruptcy Court did not err in determining that the Claim is property of the Missouri Bankruptcy estate.

II.     Proposed Settlement

We now address whether the Bankruptcy Court erred in approving the Proposed Settlement.

Appellant makes two main arguments on appeal. First, that the Bankruptcy Court erred in mechanically applying the standard for evaluating a settlement without balancing the equities. Second, that Trustee failed to meet his burden of proof of showing by a preponderance of the evidence that the Proposed Settlement

---

[30] *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696 (2020).

[31] *Id.* at 701 (citation and internal quotation omitted).

[32] *Id.* at 700–01 (citation and internal quotation omitted).

is in the best interest of the estate because he did not plead or prove anything about the Claim's value. Although Appellant raises several distinct arguments, there is only one issue for us to decide—whether the Bankruptcy Court abused its discretion or committed plain error in approving the Proposed Settlement.

The standard for evaluating a settlement is "whether the settlement is fair and equitable and in the best interests of the estate."[33] A settlement is not required to achieve the "best result obtainable."[34] Instead, the party seeking approval must show that the settlement "does not fall below the lowest point in the range of reasonableness."[35]

In the Eighth Circuit, courts consider the four *Lovald* factors in determining whether a proposed settlement fits within the range of reasonableness.[36] The *Lovald* factors are: 1) the probably of success in the litigation; 2) the difficulties, if any, in the manner of collection; 3) the complexity of the litigation and the attending expense, inconvenience, and delay; and 4) the paramount interest of creditors and proper deference to their reasonable views about the litigation.[37] A bankruptcy court abuses its discretion in approving a settlement if it fails to make findings of fact and conclusions of law addressing the *Lovald* factors.[38]

Here, the Bankruptcy Court applied the correct legal principles in evaluating the Proposed Settlement and did not base its ruling on an erroneous view of the law.

---

[33] *Lovald*, 525 F.3d at 654 (citation and internal quotation omitted).

[34] *Id*. (citation and internal quotation omitted).

[35] *Id*. (citation and internal quotation omitted).

[36] *Id*.

[37] *Id.*

[38] *Velde v. First Int'l Bank & Tr.* (*In re Y-Knot Constr., Inc.*), 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007).

The Bankruptcy Court correctly stated that the "best result obtainable" is not required in order for Trustee to meet his burden of proof.

The Bankruptcy Court conducted a thorough analysis of the *Lovald* factors and made detailed findings of fact and conclusions of law. The Bankruptcy Court held that three of the *Lovald* factors weighed in favor of the Proposed Settlement—the probability of success, the complexity of the litigation, and the interest of creditors—and one factor weighed slightly against the Proposed Settlement—difficulties in the manner of collection.

The Bankruptcy Court applied the correct legal principles and conducted a thorough analysis of the *Lovald* factors, and did not commit plain error or abuse its discretion in approving the Proposed Settlement.

III.    Motions to Seal

Finally, Appellant argues that the Bankruptcy Court erred by denying the motions to file under seal. In denying the motions, Appellant claims that the Bankruptcy Court failed to accept evidence that would have shown the Claim's true potential value to be much higher than the settlement amount. Appellant's argument is that the documents would have assisted the Bankruptcy Court in making its determination on the reasonableness of the Proposed Settlement.

As a threshold matter, there is not enough information in the record to determine what specific documents Appellant and Marianist Province sought to file under seal. We infer from oral argument and the Bankruptcy Court's orders, however, that the documents were from the State Court Action and other potentially related cases.

Appellant does not argue, and did not argue below, that the Proposed Settlement itself fell outside the range of reasonableness, which is the standard for approving a settlement. Instead, Appellant speculates that the Claim's value could be higher than the settlement amount and asserts that the documents to be filed under

seal would have shown this. As the Bankruptcy Court correctly stated, the "best result obtainable" is not required for approving a settlement. The Bankruptcy Court's orders made clear that it had all the facts necessary to critically assess the Proposed Settlement without the need for additional evidence because most of the documents were already part of the public record or had been previously filed with the Bankruptcy Court. Thus, we hold that the Bankruptcy Court did not abuse its discretion in denying the motions to seal.

We considered all other arguments advanced by Appellant and deem them to be without merit and unnecessary to address.

## CONCLUSION

For the reasons stated above, we affirm the Bankruptcy Court.

_____